## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**GREAT AMERICAN INSURANCE COMPANY,**

**Plaintiff,**

v.

**JOHNSON CONTROLS, INC.,**

**Defendant.**

**Case No. 1:20-cv-96**

**JUDGE DOUGLAS R. COLE**

## <u>OPINION AND ORDER</u>

This matter involving a bond dispute arising from an underlying construction project is before the Court on Defendant Johnson Controls, Inc.'s Motion to Compel Arbitration and to Dismiss Plaintiff's Complaint. (Doc. 3). At the Plaintiff's request, the Court held a telephone status conference on July 8, 2020, where the parties requested an expedited ruling. Also before the Court is Johnson Controls' Motion for Stay, which Johnson Controls filed on July 30, 2020. (Doc. 9).

For the reasons that follow, the Court determines that, based on the language of the bond and the subcontract at issue, the parties are required to submit the threshold issue of the arbitrability of their dispute to an arbitrator. Thus, the Court **GRANTS** Defendant's Motion (Doc. 3), **COMPELS** the parties to arbitrate the issue of arbitrability (and the merits of the claim, should the arbitrator determine the dispute is arbitrable), **DENIES** Johnson Controls' Motion for Stay (Doc. 9), and **DISMISSES** the action (Doc. 1) **WITHOUT PREJUDICE.**

## BACKGROUND

Any construction project is complex, but building a hospital is especially so. For the hospital construction project underlying the instant dispute, the project owner contracted with a general contractor, who enlisted subcontractors, who in turn relied on "sub-subcontractors" to complete specific, specialized work. In theory, by each contributing their part, the hospital would be built on time and on budget. But, as often happens with complex construction projects, delays and performance issues arose. This request for declaratory judgment relates to one such issue.

### A.      The Construction Subcontract And Great American's Bond.

In October 2017, Defendant Johnson Controls, Inc. ("Johnson Controls") entered into a subcontract (the "Subcontract") with Structured Cabling Solutions, Inc. d/b/a SCS Technologies ("SCS"). (Compl., Doc. 1, ¶ 7, #12[1]). The Subcontract required SCS to perform "low voltage cabling work" related to construction of the MUSC Shawn Jenkins Children's Hospital in Charleston, South Carolina (the "Project"). (*Id.*).

Of particular relevance here, the Subcontract includes an arbitration provision (the "Arbitration Provision"):

**6.6      Disputes**

If any dispute shall arise between Subcontractor and Contractor in connection with this Subcontract, the parties shall promptly attempt in good faith to settle the same by negotiation. Subcontractor shall give Contractor written notice of its intent to exercise its rights under the Disputes Paragraph at least 30 days prior to initiating any legal action. At any time and at Contractor's election, the parties shall participate in

---

[1] Refers to PageID Number.

mediation under the rules of the American Arbitration Association. The costs of the mediation shall be borne equally by the parties, and such costs shall not be recoverable by either party under the Attorney's Fees paragraph of this Subcontract.

All disputes not settled by negotiation or mediation shall be reserved until the final completion or termination of the Work and negotiation or mediation, *at which time they shall be submitted to arbitration in accordance with the prevailing Construction Industry Rules of the American Arbitration Association*, except as modified in this paragraph. ...

> ...

Subcontractor further agrees to include a provision in all subcontracts, purchase orders or agreements to provide labor or material in connection with the Work that requires all disputes related to such subcontract, purchase order, or agreement to provide labor or material in connection with the Work to be resolved by arbitration in accordance with the rules of the AAA. Subcontractor authorizes Contractor to demand arbitration on its behalf against any subcontractor or supplier who claims that amounts are due for labor or material provided in connection with the Work. Subcontractor acknowledges that this is a material provision of this Subcontract.

(Def.'s Mot. Ex. B, Doc. 3-1, #114–15[2] (emphasis added)).[3]

---

[2] Whether the Court may consider the Subcontract in deciding the pending motion is discussed below.

[3] The Subcontract also incorporated all higher level contracts, including those one level up, between Johnson Controls and the Project's general contractor Robins & Morton (the "R&M Subcontract"), and two levels up, between Robins & Morton and the Project owner (the "Prime Contract"), both of which contain their own arbitration provision. The R&M Subcontract provides, in relevant part that:

> 30.4    Except as provided in Paragraph 30.5, any remaining claims of Subcontractor that cannot be resolved in accordance with the provisions of the Contract Documents or the Subcontract, shall be finally determined by binding arbitration in accordance with the Construction Industry Rules of the American Arbitration Association as those Rules existed on January 1, 1994 ... .

(Mot. to Compel Ex. A, Doc. 3-1, #63). The Prime Contract further requires arbitration in certain instances pursuant to South Carolina's adoption of the Uniform Arbitration Act. (*See*

In addition to requiring SCS to perform certain specified work, the Subcontract also required SCS to secure a payment and performance bond. (*See* Compl. at ¶ 8, #12). The plaintiff in this action, Great American Insurance Company ("Great American"), issued the required bond (the "Bond") securing SCS's performance. The Bond named Johnson Controls as the "Obligee" and included a penal sum in the base Subcontract amount of $1,202,045. (*See* Compl. Ex. 1 (the "Bond"), Doc. 1-1, #18). The Bond further provided that it incorporated the Subcontract by reference:

> 1. **SCOPE OF BOND**. The Principal and the Surety, jointly and severally, bind themselves, ... to the Obligee for the performance of the Subcontract, which is incorporated in this bond by reference. In no event shall the Surety's total obligation exceed the penal amount of this bond.

(*Id.* at #19).

After several setbacks related to SCS's performance, on June 13, 2019, Johnson Controls sent Great American a letter indicating SCS had not upheld its end of the Subcontract and had "walked off the job." (Compl. at ¶ 10, #12). At that point, Johnson Controls was left with several options under the Subcontract, one of which allowed it to retain a "supplementation contractor" to complete SCS's unfinished work. (*See id.* at ¶ 12, #13).

While SCS allegedly eventually agreed to return with a "partial crew," Johnson Controls also went ahead and retained a replacement contractor. (*Id.*). Johnson Controls informed Great American that the preliminary cost to complete SCS's

---

Def.'s Reply Ex. 1-A, Doc. 8-1, #234–35). As described below, these arbitration provisions are irrelevant to the issue currently before the Court.

remaining work would be roughly $100,000. (*Id.* at ¶ 14). Subsequently, Great American and Johnson Controls negotiated a supplementation plan, and Johnson Controls indicated it was holding roughly $209,000 in contract funds that had not yet been paid to SCS. (*Id.* at ¶¶ 15–16). Around the same time, Great American also paid $235,000 in claims under the Bond to one of SCS's materials suppliers. (*Id.* at ¶ 17).

Over the next several months, Johnson Controls and Great American exchanged multiple revised costs to complete, fixed-price costs to complete, and settlement offers in an attempt to negotiate a resolution. (*See id.* at ¶¶ 18–27, #13–14). Simultaneously, Johnson Controls continued to submit project cost estimates to Great American, and the estimated cost to complete SCS's work continued to rise. (*See id.*). The last proposal that Johnson Controls tendered, which would be its final, set the fixed-price cost to complete SCS's work at $1,146,000. (*See id.* at ¶ 27, #14). Great American rejected that proposal. (*Id.* at ¶ 28). Instead, it offered a "lump sum amount" of "$100,000 over the remaining contract balance of $209,000" and subsequently increased that amount to $125,000. (*Id.* at ¶¶ 24, 26).

Great American then filed this action on February 4, 2020, requesting a declaratory judgment that: (1) Johnson Controls breached its duties to Great American by providing false and inaccurate information and claiming excessive amounts; (2) Great American is obligated to pay, at most, $26,000; (3) Great American is entitled to credits and set-offs; (4) Johnson Controls "negligently, intentionally, and/or recklessly misrepresented" the cost to complete; (5) Johnson

Controls failed to mitigate its damages; (6) Johnson Controls is estopped from claiming more than $26,000; and (7) the Bond is null and void. (*See id.* at ¶ 33, #15).

## B. Johnson Controls Moved To Dismiss And Subsequently Filed An Arbitration Demand While Its Motion Was Pending.

Johnson Controls responded to the lawsuit with the pending motion to dismiss this action and to compel arbitration. (*See* Johnson Controls's Mot. to Compel Arbitration and to Dismiss Pl.'s Compl. ("Mot. to Compel"), Doc. 3, #24–43). In support of its motion, Johnson Controls makes several arguments. Its principal argument hinges on its belief that, as the Bond incorporates the Subcontract, which includes the Arbitration Provision, that provision thus applies to Great American (and this dispute), too. This in turn means, Johnson Controls argues, that all issues related to performance under the Bond must be referred to arbitration, including threshold questions of arbitrability. (*Id.* at #32). On that last point, Johnson Controls asserts that "'when a contract requires arbitration pursuant to AAA Rules, it clearly and unmistakably vests the arbitrator, and not the district court, with authority to decide which issues are subject to arbitration.'" (*Id.* (quoting *Bishop v. Gosiger, Inc.*, 692 F. Supp. 2d 762, 769 (E.D. Mich. 2007)).

If the Court instead determines that it must decide arbitrability, Johnson Controls argues all four factors announced in *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000), are satisfied as to the instant dispute, meaning the Court must refer the dispute to arbitration. (Mot. to Compel at #34). Marching through those factors, it argues that (1) an agreement to arbitrate exists between Johnson Controls and Great American; (2) the arbitration agreement is broad enough to encompass Great

6

American's claims; (3) there is no congressional intent to indicate that declaratory judgment actions are nonarbitrable; and (4) because all of Great American's claims (in fact, their only claim) belong in arbitration, dismissal—instead of a stay—is proper. (*See id.* at #34–43).

Great American, on the other hand, argues against arbitration on multiple fronts. (*See* Pl.'s Mem. in Opp'n to Def.'s Mot. to Compel ("Pl.'s Resp."), Doc. 6, #145–61). It first notes that the Bond uses the term "suit" in Article 6 when referring to disputes. (*See id.* at #152–54). Great American argues that the "plain and ordinary meaning" of the term "suit" is a court action, and thus the Bond "clearly contemplates the use of litigation to resolve claims arising under the Bond," an argument it says finds support in *Ray Industries, Inc. v. Liberty Mutual Insurance Company*, 974 F.2d 754 (6th Cir. 1992). (Pl.'s Resp. at #152–54 (citing *Ray Indus.*, 974 F.2d at 761)).

Great American also argues that because the Bond incorporates the Subcontract, (*id.* at #154), and because the Subcontract incorporates all "higher order" contracts, Johnson Controls's initial failure to provide the R&M Subcontract and the Prime Contract means that the Court cannot decide the instant motion because "the entirety of the agreement is not present." (*Id.* at #155). Finally, Great American argues that the arbitration provision in the Subcontract refers only to disputes between "between Subcontractor [i.e., SCS] and Contractor [i.e., Johnson Controls]" and thus does not sweep into its scope disputes between the surety (i.e., Great American) and Johnson Controls. (*Id.* at #157–58).

In reply, Johnson Controls notes first that Great American did not contest the argument that incorporation of the AAA Rules "clearly" delegates the question of arbitrability to an arbitrator. That, in and of itself, Johnson Controls says, means that Great American essentially has conceded that the matter should go to arbitration, at least to consider the threshold question of arbitrability. (*See* Def.'s Reply in Supp. of Mot. to Compel, Doc. 8, #165–66). Apart from that, Johnson Controls reiterates that because Great American admits the Subcontract's arbitration clause is incorporated into the Bond, any argument that Great American, as the surety, is not also bound by that arbitration provision is incorrect. (*See id.* at #167–70).

Johnson Controls also distinguishes this case from *Ray Industries* as to the use of the term "suit" in the Bond, arguing that the term appears here only in the statute of limitations clause, a section unrelated to whether or not arbitration is required. (*Id.* at #170). Johnson Controls further argues that Great American's reliance on *Ray Industries* is misplaced because that case is factually inapplicable, was interpreting Michigan law, and was later rejected by the Michigan Supreme Court. (*Id.* at #170–71 (citing *Anderson Dev. Co. v. Travelers Indem. Co.*, 49 F.3d 1128, 1131 (6th Cir. 1995))). In addition, Johnson Controls argues the Arbitration Clause does not limit who must or may arbitrate, and even if it did, Great American is bound jointly and severally with SCS to perform under the Subcontract, pursuant to the Bond. (*Id.* at #171–72). Finally, Johnson Controls argues Great American conceded the final two *Stout* factors, and because the first two factors also favor Johnson Controls, it should prevail. (*Id.* at #174–75). And out of an abundance of caution, Johnson Controls also

attached as exhibits to its reply the contracts that Great American claims are necessary to resolve this issue. (*See id.* at #175–77; Exs. 1-A, 1-B, Doc. 8-1, #184–309).

Two final notes. First, in what could be construed as an effort to preempt the Court's consideration of the arbitration issue, on April 29, 2020, before the pending motion was even ripe, Johnson Controls filed an arbitration demand with the AAA. (*See* Def.'s Reply Exs. 2, 2-A–2-D, Decl. of Shannon Phillips, ¶ 5, Doc. 8-2, #321–81). Second, Johnson Controls has also recently filed a motion seeking to change its requested relief from the dismissal the pending motion requests to a stay instead. (*See* Def.'s Mot. and Mem. of L. in Supp. of its Application to Have the Case Stayed ("Mot. for Stay"), Doc. 9, #382–84). It apparently did so in an effort to limit Great American's ability to appeal this Court's ruling, should the Court choose to compel arbitration, as Johnson Controls contends that a dismissal would be immediately appealable, while a stay would not. (*Id.* at #383).

## LEGAL STANDARD

The first issue the Court must address is the procedural rule that applies to Johnson Controls' Motion to Compel Arbitration. Johnson Controls sought dismissal under Federal Rule of Civil Procedure 12(b)(1), arguing that this rule governs motions to compel arbitration. (*See* Mot. to Compel at #24, 33 (citing *Morrison v. Circuit City Stores, Inc.*, 70 F. Supp. 2d 815, 828 (S.D. Ohio 1999))). The Sixth Circuit, however, says that the proper vehicle for dismissing a case in favor of arbitration is Federal Rule of Civil Procedure 12(b)(6), not Rule 12(b)(1). *Knight v. Idea Buyer, LLC*, 723 F. App'x 300, 301 (6th Cir. 2018) (citing *Teamsters Local Union 480 v. United Parcel*

*Serv., Inc.*, 748 F.3d 281, 286 (6th Cir. 2014)). "A motion to dismiss pursuant to an arbitration agreement should ... be construed as a Rule 12(b)(6) motion even if it is mislabeled as a Rule 12(b)(1) motion." *Id.* (citation and quotation omitted).[4] Thus, the Court will treat Johnson Controls' motion as a "mislabeled" motion that should have been brought under Rule 12(b)(6).

Typically, in reviewing a Rule 12(b)(6) motion, the question is whether the plaintiff's complaint sets forth a plausible claim, a determination that turns on the well-pled facts. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Here, though, the issue is not whether Great American has a viable claim, but rather whether this Court is the correct forum to hear that claim. Still, in answering that question, the traditional Rule 12(b)(6) requirements apply, which leads to another antecedent issue. Under the *Iqbal/Twombly* standard, the Court is limited to reviewing only those facts alleged in the Complaint, along with any documents attached to it. *See, e.g., Whittiker v. Deutsche Bank Nat. Tr. Co.*, 605 F. Supp. 2d 914, 924 (N.D. Ohio 2009). If the Court must look beyond the pleadings to resolve the arbitration issue, that would typically require converting a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment. *See Mediacom Se. LLC v. BellSouth Telecom., Inc.*, 672 F.3d 396, 399–400 (6th Cir. 2012) (noting the district

---

[4] There is somewhat of a split of authority on the issue of whether Rule 12(b)(1) or Rule 12(b)(6) applies to motions like the one at issue here. For a robust discussion of this split, *see FCCI Insurance Company v. Nicholas County Library*, 5:18-cv-038, 2019 WL 1234319, at *2–6 (E.D. Ky. Mar. 15, 2019). That case ultimately determined that "the motion to compel ... is most properly considered as a motion to dismiss under Rule 12(b)(6)" but that "because the parties ha[d] submitted [documents] outside the pleadings," the motion to compel was more properly considered as one for summary judgment.

court erred when it made factual findings by considering matters beyond the complaint because doing so "would convert the motion to dismiss into a motion for summary judgment"). Documents that are attached to a motion to dismiss are part of the pleadings, however, if those documents are referred to in the complaint and central to its claims. *See Hivner v. Active Elec., Inc.*, 878 F. Supp. 2d 897, 901 (S.D. Ohio 2012) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007)); *see also Weiner v. Klais & Co.*, 108 F.3d 86, 88–90 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

Here, the Court finds it must consider the Subcontract in resolving the arbitration question, which, although referenced in the Complaint, was not attached, if only "due to [its] extreme bulk." (Compl. at ¶ 7, #12). Johnson Controls instead attached the Subcontract to its motion to compel arbitration and dismiss the action. (*See* Mot. to Compel Ex. B, Doc. 3-1). The Court finds that it can properly consider that document without converting the pending motion to one for summary judgment, though, because Great American's claim for declaratory judgment is based on the Bond (attached to the Complaint), which, as discussed more fully below, expressly incorporates the Subcontract. Because the Subcontract is thus implicitly part of the Complaint, and is undisputedly central to the claim here, the Court can properly consider it without converting Johnson Controls' Motion under Rule 12(b) to one under Rule 56.

## LAW & ANALYSIS

"Under the Federal Arbitration Act, 9 U.S.C. § 2, a written agreement to arbitrate disputes which arise[] out of a contract involving transactions in interstate commerce ... 'shall be valid, irrevocable and enforceable'" save any reason in law or equity to the contrary. *Stout*, 228 F.3d at 714 (quoting 9 U.S.C. § 2). Applying state law for interpreting contracts, "courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration." *Id.* (citations omitted). "Likewise, any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Id.* (citations omitted).

### A.    The Bond Is Enforceable And It Incorporates The Subcontract.

A court's first task when faced with a motion to compel arbitration is to determine whether the parties agreed to a valid contract containing an arbitration provision. *See id.* at 714 (citing *Compuserve, Inc. v. Vigny Int'l Fin., Ltd.*, 760 F. Supp. 1273, 1278 (S.D. Ohio 1990)). If the parties have done so, the second question that a court must resolve is who, the court or an arbitrator, is responsible for determining "whether their agreement covers a particular controversy," or, in other words, which of those two is responsible for determining "arbitrability." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 589 U.S. ----, 139 S. Ct. 524, 527, 529 (2019); *McGee v. Armstrong*, 941 F.3d 859, 865–66 (6th Cir. 2019) (noting the parties did not dispute the existence of an arbitration clause, and before resolving the scope of the agreement, the court needed to decide who determined arbitrability).

Here, in regard to the first question, the starting point is the Bond, which states that "[t]he Principal [i.e., SCS] and the Surety [i.e., Great American], jointly and severally, bind themselves ... to the Obligee [i.e., Johnson Controls] for the performance of the *Subcontract, which is incorporated in this bond by reference*." (Bond at #19 (emphasis added)). As the Bond incorporates the Subcontract in its entirety, the Subcontract is also relevant. Section 6.6 of that Subcontract states both that (1) "[a]ll disputes not settled by negotiation or mediation ... shall be submitted to arbitration," and (2) any such arbitration will be "in accordance with the prevailing Construction Industry Rules of the American Arbitration Association" (the "AAA Construction Rules"). (Mot. to Compel Ex. B, Doc. 3-1, #114). By its plain language then, the incorporated Subcontract includes an agreement to arbitrate. To be sure, that agreement is included in the Bond indirectly, by reference, but it is nonetheless there. And, especially given that the Bond is an agreement between sophisticated parties who would be expected to read and investigate the terms of that Bond (including any incorporated contracts) before signing, the Court has no hesitation in finding that a valid agreement to arbitrate exists.

Nor does Great American change that result through its claim that the Court cannot resolve the instant motion without the other higher order contracts, which, Great American further claims, are not properly before the Court. (*See* Pl.'s Resp. at #154–55). That argument fails for two reasons. First, the Subcontract itself, which is incorporated by reference in the Bond and attached to the Complaint, incorporates by reference all higher order contracts. This means that, for the same reason the

Court can consider the Subcontract, the Court could also consider the other referenced contracts, to the extent relevant, in determining this Rule 12(b)(6) motion.[5] Second, even were that not the case, the principal arbitration provision at issue here is the one that controls between Johnson Controls and SCS, and therefore between Johnson Controls and Great American, as SCS's surety. Thus, the Court need not reach the higher order contracts to conclude that the contract here, i.e., the Bond, includes an arbitration agreement. In sum, the Court finds that the contract between the parties that is the basis for this suit (i.e., the Bond) includes the Arbitration Provision found in the Subcontract.

## B.    The Court Need Not Determine Whether The Dispute Is Arbitrable Or The Scope Of The Arbitration Agreement.

The scope of the Arbitration Provision, however, is a separate issue. Merely because an agreement between two parties includes an arbitration provision does not mean that *all* disputes between those parties must be arbitrated. Parties could agree, for example, that disputes related to one topic will be arbitrated, while disputes as to other topics will not. These are typically referred to as issues of "scope"—does the scope of the arbitration agreement include a particular dispute or not? Here, as Great American notes, the incorporated arbitration provision refers to disputes between the "Subcontractor" and the "Contractor" (defined terms that do not include Great American, but do include SCS, for whom Great American is acting as a surety under the Bond). Thus, it is arguably the case that the Arbitration Provision does not

---

[5] For good measure, Johnson Controls provided these additional contracts as exhibits to its Reply. The Court need not consider them here.

14

include within its scope the instant dispute between Great American and Johnson Controls. The Court need not reach that issue, however, as the Court concludes that the arbitration provision at issue assigns the determination of such matters to the arbitrator, rather than the Court.

Much ink has been spilled over the years discussing the question of who decides arbitrability, including several recent Supreme Court and Sixth Circuit decisions. Like those cases, "[t]o understand this case, you first need a little background about federal arbitration law." *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844 (6th Cir. 2020). At its core, "arbitration is a matter of contract" and contracts are enforced "according to their terms." *Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Because of this, parties can agree to "have an arbitrator decide not only the merits of a particular dispute, but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein*, 139 S. Ct. at 529 (cleaned up). This is "simply an additional, antecedent agreement" about who, a court or an arbitrator, should answer these questions. *Rent-A-Center West*, 561 U.S. at 69. "And when parties have agreed to arbitrate 'arbitrability,' a court may not disregard their agreement …." *Blanton*, 962 F.3d at 844 (cleaned up).

While an arbitration agreement *can* require the parties to arbitrate arbitrability, in deciding if a particular arbitration provision actually *does* so, another rule also comes into play. More specifically, in *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995), the Supreme Court held that the default rule is

that the court decides arbitrability, rather than an arbitrator, absent "clear and unmistakable evidence" to the contrary. This rule "reverses the usual presumption" that applies in the arbitration setting. *Blanton*, 962 F.3d at 844 (citing *First Options*, 514 U.S. at 944–95). That is, if an arbitration provision is ambiguous as to *whether* it covers a particular claim, courts are generally instructed to put a "thumb on the scale in favor of arbitration." *See Solvay Pharm. v. Duramed Pharm.*, 442 F.3d 471, 478 (6th Cir. 2006) ("Courts thus review questions of arbitrability de novo, but with a thumb on the scale in favor of arbitration."); *Telecom Decision Makers, Inc. v. Access Integrated Networks, Inc.*, 654 F. App'x 218, 221 (6th Cir. 2016) (per curiam) (same) (citing *Solvay Pharm.*, 442 F.3d at 478). But ambiguity as to the threshold issue of *who decides* whether the claim is arbitrable is construed in the opposite manner— remaining with the Court absent "clear and unmistakable evidence" that the parties wanted that issue sent to the arbitrator. *Blanton*, 962 F.3d at 844.

Exactly what constitutes "clear and unmistakable evidence" can be difficult to determine in a given case. Fortunately, though, the Sixth Circuit's recent decision in *Blanton* makes the inquiry relatively straightforward here. In *Blanton*, the Sixth Circuit considered an arbitration provision that incorporated the AAA Rules for the Resolution of Employment Disputes (the "AAA Employment Rules"). *Id.* In its decision, the Circuit joined eleven of twelve circuits that have "found that the incorporation of the AAA [Employment] Rules (*or similarly worded arbitral rules*) provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'" *Id.* at 846 (emphasis added) (collecting cases).

That matters here because, while the instant arbitration provision does not incorporate the AAA *Employment* Rules, it does incorporate the AAA Construction Rules. And the latter are not merely "similarly worded," but verbatim identical, with the sole exception of an Oxford comma that is missing in the former, but included in the latter. *Compare* AAA Employment Rule 6(a) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."), *with* AAA Construction Rule 9(a) ("The arbitrator shall have the power to rule on his her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement."). The AAA Construction Rules thus likewise constitute "clear and unmistakable" evidence. *Blanton*, 962 F.3d at 846. Indeed, other circuits (some of which *Blanton* cited) have expressly held that the AAA Construction Rules satisfy the clear and unmistakable evidence standard. *See, e.g.*, *Petrofac, Inc. v. DynMcDermott Petrol. Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) (collecting cases) ("We agree with most of our sister circuits that the express adoption of these [AAA Construction Rules] presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."). Accordingly, while *Blanton* may have considered only the AAA Employment Rules, "there's no reason ... to wait to finish the puzzle" as there is "little doubt about the final picture." *Blanton*, 962 F.3d at 845. Incorporating the AAA Construction Rules, like incorporating the AAA Employment Rules, presents clear and unmistakable evidence that the parties intended to reserve arbitrability questions for an arbitrator.

This clear and unmistakable evidence that the Arbitration Provision assigns arbitrability to the arbitrator creates an insurmountable hurdle for Great American. Indeed, the Supreme Court recently held that, in the face of such evidence, a court lacks power to decide arbitrability even if the argument that a particular claim falls within the scope of the arbitration provision is "wholly groundless." *Henry Schein*, 139 S. Ct. at 529; *McGee v. Armstrong*, 941 F.3d 859, 866–67 (6th Cir. 2019) (discussing that *Henry Schein* overturned *Turi v. Main Street Adoption Servs., LLP*, 663 F.3d 496, 507, 511 (6th Cir. 2011), which had held that an arbitrator does not have authority to decide arbitrability of claims "clearly outside the scope of the arbitration clause")).

In short, given the Arbitration Provision's incorporation of the AAA Construction Rules, the question of whether the dispute here falls within the scope of that provision is a question that the arbitrator, not this Court, must decide.

## C.    The Court Concludes That Dismissal Is The Appropriate Relief Here.

Having decided that this dispute must go, at least as an initial matter, to an arbitrator, the final question the Court must address is the form of relief to provide Johnson Controls on its pending motions. Initially, Johnson Controls sought an order compelling arbitration, coupled with a dismissal of this action without prejudice. (*See* Mot. to Compel at #24). More recently, though, it instead requested a stay (rather than an order of dismissal), apparently hoping to shield the Court's Order compelling arbitration from appellate review. (*See* Mot. to Stay at #382–84).

18

As Johnson Controls notes, when a court sends claims to arbitration, the court has some latitude in determining whether to stay or dismiss an action. Examples can be found of courts doing either. *Compare, e.g.*, *Hubbell v. NCR Corp.*, No. 2:17-cv-807, 2018 WL 3008489, at \*4 (S.D. Ohio June 14, 2018) (staying action pending completion of arbitration) *with, e.g., Cunix Auto. Grp., LLC v. Larry Dimmitt Cadillac, Inc.,* No. 2:19-cv-3941, 2020 WL 1322045, at \*4 (S.D. Ohio Mar. 20, 2020) (dismissing without prejudice pending completion of arbitration). At first glance, the existence of that discretion is perhaps surprising. After all, 9 U.S.C. § 3 says that, if a court finds that a party's claims are referable to arbitration, the court "*shall* on application of one of the parties *stay* the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphases added). "Notwithstanding the plain language of the statute, however, the Sixth Circuit has interpreted section 3 as permitting dismissal of cases in which all claims are referred to arbitration." *1st Choice Auto Brokers, Inc. v. Credit Acceptance Corp.*, No. 2:06-cv-816, 2007 WL 2079722, at \*2 (S.D. Ohio July 17, 2007). Indeed, the Sixth Circuit has expressly "rejected" the argument that "9 U.S.C. § 3 requires district courts to stay suits pending arbitration rather than dismiss them." *Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009).

More recent Sixth Circuit precedent, though also unreported, perhaps muddied the waters a bit on that topic. In *Hilton v. Midland Funding, LLC*, 687 F. App'x 515 (6th Cir. 2017), the court, while rejecting the appellant's claim that the district court had erred by dismissing, rather than staying, an action, did so using language that

suggested that stays were mandatory under 9 U.S.C. § 3, if requested. (The party in *Hilton* had failed to request a stay rather than dismissal.) *See id.* at 519. More specifically, the Court observed that "[t]he FAA requires a court to stay proceedings pending arbitration only 'on application of one of the parties.'" *Id.* From that, one could argue that where, as here, a party has requested a stay, "the FAA requires [the] court" to grant that request. *Id.*

Other courts in this Circuit, though, have resisted that reading of *Hilton*, and this Court does as well. In *Kelch v. Pyramid Hotel Group*, the court explained why *Hilton* should not be understood as creating such a requirement:

> *Hilton* concluded that a district court did not err in dismissing a case, after referring the claim asserted therein to arbitration, as the plaintiff had not "appl[ied]" for (i.e., asked for) a stay (as opposed to a dismissal) in the first place. [687 F. App'x] at 518–19 (noting that such an application is a basic prerequisite to obtaining a stay under the FAA). Given its focus on this threshold matter, *Hilton* did not reach (and thus did not alter) the longstanding principle, espoused in *Hensel* [*v. Cargill, Inc.*, No. 99-3199, 1999 WL 993775, at *4 (6th Cir. Oct. 19, 1999)], *Ozormoor*, and numerous other Sixth Circuit decisions, that a case "in which all claims are referred to arbitration may be dismissed." *Hensel*, 1999 WL 993775, at *4.

No. 1:18-cv-707, 2020 WL 489237, at *3, n.5 (S.D. Ohio Jan. 30, 2020) (Black, J.); *see also Robinson v. Credit One Bank, N.A.*, No. 1:20-cv-492, 2020 WL 3270690, at *1–2 (N.D. Ohio June 17, 2020) (Barker, J.) (same) (citing *Kelch*).

That seems right. As the *Hilton* Court did not need to reach the issue, its statement about whether a stay would be "required" if requested is dicta. And the better reading of 9 U.S.C. § 3, which is reflected in *Hensel* and *Ozomoor*, is that the provision applies only when a court sends some, but not all, claims to arbitration. In such situations, the court must stay the remainder of the case. *Hensel v. Cargill, Inc.*,

198 F.3d 245 (6th Cir. 1999) ("Under § 3 of the FAA, if any separate claim is referable to arbitration, then a stay of proceedings on the remaining claims is mandatory."). But the statute does not preclude the Court from dismissing, rather than staying, the case when, as here, all of the claims (indeed, the only claim) are going to arbitration (at least to determine arbitrability), and *Hilton* does not hold otherwise.

With that statutory issue out of the way, the remaining question is whether the Court *should* dismiss the case. On that front, "[m]ost district courts in this circuit agree that the best procedure for enforcing arbitration agreements is to dismiss the court action without prejudice." *Jones v. U-Haul Co.*, 16 F. Supp. 3d 922, 944 (S.D. Ohio 2014) (citing cases). That makes sense. The order sending a matter to arbitration is not a temporary interruption in an ongoing litigation process. Rather, it reflects a determination that a dispute should be decided in a different forum. To be sure, the need for later court involvement may arise. For example, the arbitrator may determine that a matter is outside the scope of the arbitration agreement. Or a party may need judicial assistance in challenging, or enforcing, an arbitral award.

But, at least for now, this dispute is unequivocally assigned, in its entirety, to a different forum. Thus, there is no reason to maintain the vestigial shell of the case on this Court's docket. Certainly, the reason that Johnson Controls offers for doing so—seeking to prevent an appeal—provides no such basis. The Court acknowledges that the possibility of such an appeal may lead to increased costs and delay, and that such cost and delay may be antithetical to the benefits that the parties sought to

achieve through arbitration.[6] But, be that as it may, the Court is not inclined to fashion its orders one way or another merely in an effort to prevent a party from seeking review in a higher court.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Motion (Doc. 3) and **COMPELS** the matter to arbitration, at least for purposes of deciding the arbitrability of the current dispute. In doing so, the Court specifically notes that it is not determining that the present dispute *is* arbitrable, but only that an arbitrator must decide that issue. The Court further **DENIES** Defendant's Motion for Stay (Doc. 9), and **DISMISSES** the action **WITHOUT PREJUDICE**. The Court **DIRECTS** the Clerk to enter judgment accordingly.

**SO ORDERED.**

August 7, 2020
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

---

[6] Increased cost and delay is by no means a certainty. To be sure, an appeal of this Order *may* result in both. But, if the Court is incorrect that the arbitrability determination should go to an arbitrator, then having the parties proceed all the way through arbitration (if the arbitrator determines the matter is arbitrable), only to have the Sixth Circuit later find that the Court itself should have decided arbitrability (and should have resolved that issue in favor of litigation, rather than arbitration), would also result in cost and delay. Moreover, on the delay front, presumably there is no reason the parties cannot pursue an appeal while the arbitration is proceeding. Indeed, if the arbitrator were to resolve the arbitrability issue by finding the instant dispute should be litigated, rather than arbitrated, that may both moot the appeal and send the underlying dispute back to this Court.